APPLEBY *v.* SPERLING.

1. EVIDENCE—PAROL EVIDENCE—AGENCY CONTRACT—BROKERS.

In a suit for broker's commissions for the sale of lands under an agency contract in writing whereby defendant agreed "to furnish abstract and tax history showing clear title," where the prospective purchaser refused to accept the deed offered and the sale was not consummated, parol evidence that plaintiff's agent was informed of the reservation of the mineral rights by defendant's grantor, and that he assured defendant that his title was all right and not inconsistent with his agreement, was not inadmissible as tending to vary the terms of a written contract, said contract at that time not being required to be in writing.[1]

2. BROKERS—COMMISSIONS—PERFORMANCE.

Where a real estate broker knew of the reservation of the mineral rights in defendant's deed, and his customer refused to buy defendant's farm because of such reservation, he did not produce a customer ready to accept the title which he knew defendant had, and was not entitled to recover, in a suit for the commission.

3. APPEAL AND ERROR — ARGUMENT OF COUNSEL — EXCEPTIONS — RULING.

Error will not lie to exceptions to the argument of counsel, where no ruling was asked for or made.

Error to Saginaw; Kendrick, J. Submitted October 26, 1916. (Docket No. 156.) Decided March 29, 1917.

Assumpsit by Benjamin G. Appleby, doing business as B. G. Appleby Company, against Ferdinand Sperling and another for broker's commissions. Judgment for defendants. Plaintiff brings error. Affirmed.

*Snow & Snow,* for appellant.

*Otto & Davis,* for appellees.

OSTRANDER, J. Plaintiff does business as B. G. Appleby Co. Defendants own certain premises described

---

[1] On broker's right to commission on failure of employer's title, particularly effect of broker's knowledge of defect, see note in L. R. A. 1915E, 720.

On the question of where sale fails because of defects in employer's title, see notes in 3 L. R. A. (N. S.) 576; 24 L. R. A. (N. S.) 1182.

in the writing herewith set out. Plaintiff claims to
have found a purchaser for the land agreeably with
the terms of the writing, and one acceptable to de-
fendants, who were, however, unable to show a per-
fect title to the land. Plaintiff sues to recover his
commission.

"Exhibit A.

"Agency Contract—Made in Duplicate.

"I hereby place in the hands of B. G. Appleby Co.
the following described property, 160 acres southeast
quarter (1/4) of section twenty-five (25) town twelve
(12) north range three (3) East, Saginaw county,
Michigan, for the purpose of effecting a sale at the
following price and terms: $22,000. $7,000 down,
balance on time at 6 per cent. per annum, or any other
price or terms acceptable to the owner. In the event
of sale by agent or owner, I agree to pay a commis-
sion of 5 per cent. on the selling price.

"This agency shall be exclusive to the B. G. Appleby
Co. and I hereby authorize B. G. Appleby Co. to close
a sale on the price and terms above mentioned.    I
agree to furnish abstract and tax history showing
clear title.

"This agency may be terminated by giving 180 days'
notice in writing by registered mail.

"Signed this 8th day of April, 1913.

[Signed]    "FERDINAND SPERLING, Owner.

"BARBARA SPERLING.

"B. G. APPLEBY CO., By H. S. SMITH."

The alleged defect in title is a reservation in the
deed conveying the land to defendants. This convey-
ance is not listed in the index to the record, and is not
found in the record, nor does the index refer to the
alleged reservation. However, it is apparently con-
ceded that in the deed from defendants' grantor there
was reserved to the grantor one-third of all coal and
mineral under the land, with the right to enter and
remove the same. No one has claimed there is coal or
other mineral in the land.

The case for plaintiff was rested upon plaintiff's
testimony, which tended to prove that he was a real

estate broker residing in Saginaw, that H. S. Smith, who signed the said writing, was his agent and employee, who secured the writing from defendants and turned it over to plaintiff; that the farm was advertised for sale; and that another of his agents, residing in the State of Illinois, brought from Illinois a Mr. Hamm, a prospective purchaser of a Michigan farm. The particular premises were shown to Mr. Hamm, who later visited the premises again in company with his sons, saw and talked with defendant Ferdinand Sperling, and agreed with plaintiff to purchase the same, paying $500 to plaintiff on the purchase price, who did not pay it to defendants. Having arranged the sale, plaintiff wrote to defendants a letter, dated September 3, 1913, advising them that he had sold the farm "to a Mr. Hamm, of Illinois, this being the gentleman who was out to the farm with Messrs. Smith, Judy, and friend," and asking for an abstract and tax history, they to be extended to date. The terms of the sale were stated in the letter, and, further, that Mr. Hamm wished to make with defendants an arrangement "for putting in some fall wheat" and other things. The letter concluded with the postscript that possession was to be given on or before March 1, 1914. Plaintiff's testimony tends to prove, also, that an arrangement to put in wheat was made with defendants, and defendants were paid for certain things done pursuant thereto, and that defendants agreed to purchase through the plaintiff another farm, paying $100 to apply on the purchase money. The abstract was received by plaintiff in October, and was thereafter posted, or brought down, to November 11th, and was mailed to Mr. Hamm. Discovering from examination of the abstract the reservation of mineral rights, plaintiff "called up" Mr. Sperling, told him about it, and that probably objection would be made by the intending purchaser, but to wait until he heard from him,

and meantime to bring to plaintiff his deed of the land. Defendant Ferdinand did bring his deed to plaintiff. Correspondence ensued with certain persons describing themselves as attorneys for Mr. G. A. Hamm, who pointed out various defects in title as shown by the abstract, the serious one the reservation of mineral rights, and with G. A. Hamm, and with the defendants. The subject and contents of each letter were discussed by plaintiff and defendant Ferdinand, and attempts were made by plaintiff and by defendants to procure from defendants' grantor a release of the reserved mineral rights. Under date January 7, 1914, plaintiff wrote to defendant Ferdinand a letter, in which was recited the fact of selling the farm and other alleged facts, and in which a demand was made for a good title to the land, in default of which he is informed that the necessary proceedings to insure plaintiff against loss will be begun. This letter received no reply. The letters from Illinois were received in evidence, over objection that they were not proven, to show what subjects were before, and were discussed by, plaintiff and defendants regarding the sale of the farm. I do not find that when plaintiff rested he had offered any testimony tending to prove that Mr. G. A. Hamm, or any other proposed purchaser of the land, was able to pay for it, unless the inference may be drawn from other facts and circumstances testified to by the plaintiff.

With the plea defendants gave notice that they would show in their defense:

*First.* That on May 21, 1913, defendants notified plaintiff of the termination of his agency, thereby terminating the same on November 17, 1913, and any agreement which plaintiff may have made with G. A. Hamm, of Rantaul, Ill., to be performed after November 17, 1913, was made without authority.

*Second.* That plaintiff did not have a purchaser ready to buy at any time up to November 17, 1913,

but thereafter told defendants he had a buyer who was given time to March 1, 1914.

*Third.* That plaintiff and his agents, on April 8, 1913, knew the exact terms of the said reservation of mineral rights in defendants' deed, and that plaintiff's agent with such knowledge stated that the phrase "clear title" in said agency agreement did not cover said reservation, and said reservation did not affect the phrase "clear title."

*Fourth.* That the reservation in the deed is of no account in fact, and does not constitute "a lien on said title."

*Fifth.* That plaintiff never procured a purchaser who was ready, willing, and able to buy defendants' farm, and defendants did not, by their acts, defeat any consummation of sale of the premises.

*Sixth.* "Defendants will further show that the plaintiff did not act in good faith with the defendants, and concealed from them any arrangements that they made with one G. A. Hamm, and did not inform the defendants that said plaintiff had received the sum of $500 down in September, 1913, or that said G. A. Hamm, or any one else, would pay $7,000 down in September, 1913, and make arrangements for the payment of the balance, which arrangements would be satisfactory to the defendants, or when possession would be demanded; that all the plaintiff did was to ask for abstract and tax history from the defendants, which was furnished said plaintiff in the first part of October, 1913; that defendant at that time did not know of the arrangements the plaintiff had made with G. A. Hamm for the sale of the property, or what the terms of said sale were to be in regard to the paying of the balance of the money due, or when possession should be given; that the first intimation that the defendants had as to what arrangements the plaintiff had made with G. A. Hamm was after November 17, 1913, the same being first communicated to defendants in December, 1913; and that at that time said defendants were not informed, and have not been informed to this day, in what manner or what amounts the balance on the farm was to be paid by said G. A. Hamm or when."

The testimony for defendants tended to prove each of the matters so specially alleged except, perhaps, the

second one. It tended to prove, also, that defendant Ferdinand told the intending purchaser that his grantor claimed the coal in the land, who replied that he did not care. In rebuttal, plaintiff's agent, Smith, and plaintiff gave testimony.

The court submitted to the jury the questions whether it appeared by a preponderance of the evidence that plaintiff had produced a purchaser, willing, ready, and financially able to buy the farm, and whether Smith, the agent of plaintiff, who prepared the agency agreement at defendants' home, was informed about the mineral reservation in defendants' deed, upon this last point advising the jury that Smith's knowledge was plaintiff's knowledge in this regard, and, in substance and effect, that if plaintiff had knowledge of the reservation, or if knowledge of it was imputed to him, he could not recover, because his duty as defendants' agent was not performed by offering the land for sale and finding a purchaser therefor as if there was no reservation. A verdict was returned for defendants, and judgment was entered thereon.

Many exceptions appear, and there are many assignments of error, but aside from certain matters occurring upon the trial which it is claimed may have improperly influenced the jury, the controlling question is raised by exceptions to rulings admitting testimony of what defendants told plaintiff's agent about the title to the land and the objections to the charge of the court upon the effect of knowledge thus acquired. The objection to the testimony was that it tended to vary and contradict the terms of the agency contract, which contains the words, "I agree to furnish abstract and tax history showing clear title." The case of *Wolf v. Megantz,* 184 Mich. 452 (151 N. W. 622, Am. & Eng. Ann. Cas. 1916D, 1146), is relied upon by appellant.

There can be no doubt about the general rule of evidence referred to by appellant. But this rule has

no application to the facts in this case, assuming that the jury found them to be as defendants' testimony tended to prove them to be. It is undisputed that plaintiff's agent called upon defendants at their home, ate dinner with the family, and prepared and secured the agency agreement which he solicited and which is herein set out. The testimony for defendants is that the matter of this reservation in the deed was discussed before the agreement was made, and that whether it affected the title was a question raised by defendants and answered by plaintiff's agent in the negative, after he had examined the deed which evidenced the defendants' title to the land.

"Your title is all right; lots of farms with such claims on, and never any trouble. It ain't necessary to put it in the contract"

—is what the plaintiff's agent is said to have said. The clause was put into the written memorandum, if this is true, with the mutual understanding of the parties thereto that such a reservation was not inconsistent with a clear title—was consistent with a clear title, as both of them understood the phrase. It is inferable from the testimony that many lands in Saginaw county have been conveyed with similar reservations, the land being intended for use and used for farms. The memorandum is not a deed, a lease, or an option for the purchase of real estate. It is an agreement between a principal and his agent, creating the relation, defining the agency, and stating the commission to be paid in the event of a sale of the premises. It was not a contract which was then required to be in writing. The phrase "clear title" may, and may not, be ambiguous, depending upon the connection in which it is used. If, for example, there is, in fact, no coal or other mineral in the land, the reservation in defendants' deed amounts to nothing as affecting his title. It is a reservation which upon the record ap-

pears to affect the title, but may have been generally regarded as not, in fact, affecting it, or may have so been regarded by plaintiff's agent.

The controlling consideration is this: That if, as is claimed by plaintiff, his customer refused to buy the farm because of the reservation of mineral, and solely for this reason, he has not produced a customer ready to accept the title which plaintiff knew defendant had, whether the title is, in fact, perfect or imperfect. No one excepting the plaintiff has relied upon the agency contract, no rights other than those of the parties thereto are affected. Whatever effort he put forth to make a sale of the land, plaintiff knew that the alleged infirmity in the title to the land would be eventually confronted, and that it might result in defeating a sale. He says it did defeat a sale. The injustice of permitting him to now claim that the commission has been earned is manifest. I conclude that it was not error to receive the testimony, and that correct instructions upon the effect of it were given to the jury. This view disposes of other objections to the charge which are urged by appellant. It disposes, also, of other exceptions to rulings upon the admission and rejection of testimony, affecting the point which has beer discussed.

Error is assigned upon exceptions taken to the argument to the jury of counsel for defendants. Counsel for appellant contented himself with an exception in each instance, and no ruling was asked for or made. Repeatedly this court has refused to consider similar exceptions.

All assignments of error have been examined, and the conclusion is that no reversible error is made to appear.

The judgment is therefore affirmed.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.