CAIN *v.* MASURETTE.

1. BROKERS—COMMISSIONS—SALE—WHEN EFFECTED.
 The word "sale" as used in a contract to pay a broker's commission upon the sale of property is applicable to a written contract for the purchase of the property binding both vendor and purchaser, although a formal deed has not been executed.

2. SAME—COMMISSIONS—DEFECTIVE TITLE—AGENT'S KNOWLEDGE.
 There can be no recovery by a real estate broker of a commission contracted for upon a sale where the sale is not consummated because of defects in the employer's title known or which should have been known to such broker at the time he contracted for a commission, unless it was the intention of the parties that the title should

be subsequently perfected by the employer in order to be able to perform.[1]

3. APPEAL AND ERROR—QUESTION FOR JURY—CONFLICTING TESTIMONY.

    Where defendant testified and plaintiff denied, in an action to recover an agreed commission for effecting a sale of defendant's premises, that at the time defendant signed the agreement for such sale he stated to plaintiff that if it required his wife's signature to the deed he could not give it, *held*, that a question of fact was presented for the jury, and the court erred in directing a verdict for the plaintiff.

Error to Wayne; Mandell, J. Submitted October 24, 1916. (Docket No. 47.) Decided April 9, 1917.

Assumpsit by Earl R. Cain against William F. Masurette for broker's commissions. Judgment for plaintiff on a directed verdict. Defendant brings error. Reversed.

*William Henry Gallagher* and *Francis T. McGann*, for appellant.

*William C. Harris*, for appellee.

STONE, J. This is an action in assumpsit to recover commissions claimed to be due the plaintiff for effecting a sale of certain real estate belonging to the defendant. On April 9, 1913, the defendant, at the solicitation of the plaintiff, signed and delivered to the plaintiff the following writing:

                            "April 9, 1913.
    "I hereby offer to sell to C. M. Harmon, or his assigns lot nine (9) of block eight (8) of Crane & Wes-

---

[1] On broker's right to commission on failure of employer's title, see notes in 3 L. R. A. (N. S.) 576; 24 L. R. A. (N. S.) 1182; L. R. A. 1915E, 714; particularly as to effect of broker's knowledge of defect, see p. 720 of same note.

    On effect of contract expressly making broker's right to commissions dependent upon "sale" of property or other condition beyond that ordinarily implied, see note in 29 L. R. A. (N. S.) 533.

son's subdivision, said premises having a frontage of thirty-eight (38) feet on the easterly side of Elton Park, and a depth of eighty (80) feet along the northerly side of Elizabeth street, for the sum of thirty-five hundred ($3,500) dollars, payable as follows: One hundred ($100) dollars on the acceptance of this offer, and the balance within ten (10) days after delivery of abstract of title showing good marketable title.

"I also agree to give a good and sufficient warranty deed conveying said premises, free and clear from all incumbrances. This offer will hold good if accepted on or before April 12, 1913.

[Signed]   "WM. F. MASURETTE.

"I also agree to pay Earl R. Cain a commission of 3 per cent. of selling price in case he effects a sale under above agreement.

[Signed]   "WM. F. MASURETTE."

On April 10, 1913, Mr. Harmon assigned said instrument to Timothy R. Donovan (whom the plaintiff had interested in the property) by the following writing:

"In consideration of one dollar I hereby assign the interest I have in the attached agreement to Timothy R. Donovan.

[Signed]   "C. M. HARMON.
"4/10/13."

On the same day Mr. Donovan sent, by the plaintiff, to the defendant the following acceptance inclosing his check for $100, viz.:

"DETROIT, MICHIGAN, April 10, 1913.
"WM. F. MASURETTE, ESQ.,
  "Detroit, Mich.
  "*Dear Sir:* As assignee of C. M. Harmon, I hereby accept your offer dated April 9, 1913, to sell lot nine (9) of block eight (8) of Crane & Wesson's subdivision, price to be thirty-five hundred ($3,500) dollars, payable in accordance with the terms of your offer and I herewith hand you my check for one hundred ($100) dollars.

"Respectfully yours,
[Signed]   "TIMOTHY R. DONOVAN."

On April 12, 1913, the defendant received said acceptance and accompanying check, and gave to Mr. Donovan the following receipt:

"$100.00. DETROIT, MICHIGAN, April 12, 1913.
"Received of Timothy R. Donovan one hundred dollars, payment on purchase price of my property corner Elizabeth and Elton Park as per agreement.
[Signed] "WM. F. MASURETTE."

All of these negotiations were brought about by the plaintiff.

An abstract was duly furnished showing title in defendant. It appeared, however, that the defendant was a married man. His wife was in France. It further appeared that the defendant and his family had formerly lived in Canada; that at the time of the trial below, which was at the January term of 1915, the defendant testified that except for three months while he was in Windsor, he had lived in Detroit continuously for four or five years; that when he came to Detroit his family went to Paris, France. When the question of making and delivering a deed arose, Mr. Donovan wanted the signature of defendant's wife to the deed. Upon that subject defendant testified as follows:

"I was to deliver the abstract and deed to his [plaintiff's] office, and did so. I went there for the purpose of closing the deal. It was not closed on account of not having my wife's signature. I was willing to sign myself and told them so, but they would not take my deed. They suggested sending the papers to my wife. I did so. She was not willing to sign. She was then in Paris. She had never lived in this city up to that time. She came to this country in August, 1913, and to this city in October of the same year. * * * I am not now the owner of that property. I afterwards sold it and my wife joined in the deed. She was then living in this State. The check that I received from Donovan was returned to him about three months later."

The defendant also testified that at the time of sign-ing the option agreement, he told the plaintiff that his wife was in Paris, and that if it required his wife's signature he could not "give it to them." This was denied by the plaintiff, who testified that he did not learn that defendant was a married man until the lat-ter came to his office to close the deal. Before the close of the evidence, defendant's counsel offered to show that the wife of defendant had never been a resident of this State prior to August, 1913; that in March, 1910, she lived in London, Ontario, and at that time moved to France and remained there, resid-ing there until August, 1913, when she came to this country; that she received the deed sent to her by her husband, and refused to join in the conveyance, until she returned to this country and examined the transaction. The record is silent as to any ruling upon this offer.

Defendant's counsel also moved for a directed ver-dict of no cause of action for the reason that the evi-dence did not show that the plaintiff procured a pur-chaser who was ready, willing, and able to carry the deal through, it appearing that no claim was made that the defendant's wife was a resident of the State at the time the deal was projected, so that defendant's conveyance itself was sufficient to pass title. Said motion was denied and an exception noted, whereupon the court directed a verdict for the plaintiff for $114.60, being the amount of said commissions and the interest thereon, and a judgment was entered ac-cordingly. There was a motion for a new trial by defendant, alleging error in not directing a verdict for the defendant for the reasons stated, and in directing a verdict for the plaintiff. The motion was denied, and the reasons for such denial were duly filed and excepted to. The defendant has brought the case here for re-view, and the assignments of error raise substantially

the same questions that were raised upon the motion for a new trial, and also that the court erred in not submitting to the jury the question whether or not plaintiff had full knowledge of the fact that defendant was able to give only his own deed to said property.

Counsel for defendant state that the following questions are involved:

(1) Where a broker contracts that he shall be entitled to a commission "in case he effects a sale," Does his right to commission accrue when a contract to buy and sell is signed, or only when the deal is actually completed and title passed?

(2) When a broker is informed of the character of the title which the vendor is prepared to convey, and is informed that any deal must be dependent upon such title being acceptable, if the purchaser secured by the broker refuses to consummate the deal solely because of such defect in title, Is the broker entitled to his commission?

1. An examination of the authorities cited by counsel, and the weight of authority, satisfy us that the word "sale," as used in an agreement to pay a broker upon sale of the estate, applies to a written contract for the purchase of the estate binding both vendor and purchaser, although a formal deed has not been made. It is undisputed that defendant accepted Mr. Donovan as a purchaser, thus making a binding contract, and defendant receipted to Mr. Harmon directly for the $100 paid on account of the purchase. It is well that we keep in view the object of this suit. It is for commissions claimed to have been earned by plaintiff. The doctrine is well stated by Mitchell, J., in *Francis* v. *Baker*, 45 Minn. 83 (47 N. W. 452), where it is said:

"If, without any fraud, concealment, or other improper practice on part of the broker, the principal accepts the person presented, either on the terms previously proposed or upon modified terms then agreed upon, and enters into a binding and enforceable con-

tract with him for the purchase of the property, the commission is fully earned. The party presented is then a purchaser, within the meaning of the contract between the principal and the broker, although the sale is not completed or executed by payment of the consideration to the vendor. *Rice* v. *Mayo*, 107 Mass. 550; *Pearson* v. *Mason*, 120 Mass. 53; *Coleman's Ex'r* v. *Meade*, 13 Bush (Ky.), 358; *Love* v. *Miller*, 53 Ind. 294 [21 Am. Rep. 192]; *Glentworth* v. *Luther*, 21 Barb. (N. Y.) 145; *Simonson* v. *Kissick*, 4 Daly (N. Y.), 143; *Keys* v. *Johnson*, 68 Pa. 43. In fact the authorities are all one way on this question, the only apparent exception being *Richards* v. *Jackson*, 31 Md. 253 [1 Am. Rep. 49], which, however, might have been decided upon the ground that the party presented had never entered into any enforceable contract of purchase, the written agreement containing a provision giving him the option to release himself of all liability by paying a sum of money as a forfeit. This was the ground upon which *Kimberly* v. *Henderson*, 29 Md. 512, was decided."

An agent undertaking to sell, and one undertaking to find a purchaser, are not to be distinguished, as in either case he is required to do no more than find a purchaser who is accepted, and who enters into a binding contract. *McFarland* v. *Lillard*, 2 Ind. App. 160 (28 N. E. 229, 50 Am. St. Rep. 234). See 19 Cyc. p. 243, and cases cited in note, including *Whitaker* v. *Engle*, 111 Mich. 205 (69 N. W. 493).

2. As we have said, the object of this suit was to recover for commissions claimed to have been earned by the broker in making a sale. While the weight of authority is to the effect that it is no defense to an action brought by an agent against his principal to recover commissions for negotiating a sale of land that the principal does not hold title to the land, or cannot convey a perfect title (see 19 Cyc. p. 240, and cases cited in note), yet the decisions generally hold that where a broker, who at the time he makes his contract with the owner, knows of defects in the em-

ployer's title, or who knows of facts sufficient to put a prudent person on inquiry, which, if followed with reasonable diligence, would have resulted in such knowledge, he is not entitled to recover where the sale failed because of such facts, unless it was the intention of the parties that the employer should subsequently perfect his title in order to be able to perform. 4 R. C. L. p. 313, and cases cited in note.

It should be borne in mind that defendant testified that, at the time of signing the option agreement, he told plaintiff that if it required his wife's signature he could not "give it to them." While this was denied by the plaintiff, yet it presented a question of fact that should have been submitted to the jury. *Appleby* v. *Sperling*, 194 Mich. 681 (161 N. W. 873).

We are of the opinion that the trial court erred in directing a verdict for the plaintiff, and that it should have submitted this question to the jury under proper instructions. By reason of this error we are constrained to reverse the judgment below. The judgment is reversed, and a new trial granted, with costs to the appellant.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.