CHAPIN v. J. E. BOLLES IRON & WIRE WORKS.

1. BROKERS—REAL ESTATE BROKERS—NOTICE OF RESTRICTIONS IN TITLE—RIGHT TO RECOVER COMMISSION.
    A broker who has knowledge of restrictions in the seller's title may not recover his commission where the sale fails of consummation because of such restriction.

2. SAME—EXCEPTIONS TO GENERAL RULE.
    But said rule is not applicable where the testimony shows that it was the intention of the parties that the seller should perfect the title by removing the incumbrances in the form of leases, and the sale failed of consummation because of its failure to do so.

3. Frauds, Statute of—Brokers—Moral Obligation—Considera-
tion.

The moral obligation to pay a real estate broker for services
rendered in the sale of real estate resulting in pecuniary
benefit to the seller will support a promise in writing in
the form of a note to pay "in consideration of services
rendered," etc., although said writing was insufficient to
comply with the statute of frauds (3 Comp. Laws 1915,
§ 11981).

4. Interest—Brokers—Seller's Breach No Defense to Delay
Interest.

Where the consummation of a sale of real estate was de-
layed by reason of defendant's breach in failing to have
an incumbrance removed, it cannot interpose said breach
to defer the date of the maturity of its contract with
plaintiff broker for the payment of the commission, and
plaintiff is therefore entitled to interest from the date of
tender of payment.

Error to Wayne, Goff (John H.), J. Submitted
January 14, 1921. (Docket No. 21.) Decided March.
30, 1921.

Assumpsit by Albert E. Chapin against J. E. Bolles
Iron & Wire Works for commissions on the sale of real
estate. Judgment for plaintiff on a directed verdict.
Defendant brings error. Affirmed.

*Bishop & Kilpatrick (R. R. Weaver,* of counsel), for
appellant.

*Munro & Powell* and *Ralph M. Tate,* for appellee.

Plaintiff is a Detroit real estate broker. Defendant
owned property at 53 and 55 Porter street available
for a manufacturing plant which it desired to sell. It,
through its manager, Mr. Mansfield, engaged plaintiff
who had performed similar services for it before to
handle the deal. He with the assistance of others suc-
ceeded in interesting the Mutual Electric & Machine

Company, of which Mr. Frank was president, and on August 14, 1918, Mr. Frank on behalf of his company made a written offer to buy the premises for the sum of $95,000, and deposited with the Security Trust Company $5,000 to apply on the purchase price. The deal was to be closed on or before November 1st following, when possession free from tenants was to be given and "a good and merchantable title" was to be conveyed. Upon delivery of this offer to the defendant it executed and delivered to plaintiff the following memorandum:

"DETROIT, MICH., August 14th, 1918.
"Mr. A. E. CHAPIN,
        "City.
"*Dear Sir:* In consideration of services rendered by you in the sale of our property known as 53 and 55 Porter street, Detroit, Michigan, to the Mutual Electric Machine Company, of Detroit, we hereby agree to pay you for such services a sum equal to three per cent. of the total consideration we accept for said premises and agree to pay said sum to you simultaneously upon payment to us for said property.
        "Yours truly,
        "J. E. BOLLES IRON & WIRE WORKS,
        "J. B. MANSFIELD,
                "Prest. and Gen'l Mgr."

The premises were then occupied by two separate tenants: The Doble-Detroit Steam Motors Company and H. L. Willing Company. Of this all the parties, including the plaintiff, had knowledge. None of the parties seem to have regarded the lease of the Doble-Detroit Company as a serious impediment to carrying out the deal. This company was in financial straits, its rent was past due and it was doing little, if any, business. The Willing Company lease had some years to run and trouble was anticipated from this source. On August 30th the Mutual Electric & Machine Company made a supplemental offer agreeing to pay one-

half of the excess of $2,500 up to $5,000 that might be necessary to be paid to secure the release of the Willing Company lease. This supplemental offer concluding with the following:

"In all other respects our proposition still holds good, provided you accept same at once, and your acceptance hereunder constitutes an acceptance of our offer of August 14th, 1918, as supplemented herewith."

On the same day it was made it was accepted by the defendant, it having on August 22d obtained an agreement from the Willing Company to surrender its lease for the sum of $5,000.

No steps appear to have been taken by defendant to secure a release from the Doble-Detroit Company of its leasehold interest, although its president had indicated that the company could get out very easily. Plaintiff did, however, serve a notice to quit on this company; it was signed by defendant, the grounds of the notice being nonpayment of rent. So sure did defendant's officers seem to feel that the Doble-Detroit Company lease could be gotten rid of that they neglected to get it out of the way until it was too late. They assured Mr. Frank by letter, and it would seem otherwise, that no difficulty would be experienced from that source, and he understood they had arrangements already made with reference to their vacating the property. Indeed, all the parties seem to have regarded this lease as no impediment to the consummation of the deal.

Defendant was considerably indebted to one of its principal stockholders, a Mr. Kolb of Saginaw, and had assigned the lease of the Doble-Detroit Company to him as security. After the notice to quit had been served on the Doble-Detroit Company its officers got in touch with Mr. Kolb and secured from him an extension of time in which to pay the rent which prevented

defendant from ousting the Doble-Detroit Company by November 1st. On that day Mr. Frank on behalf of his company made tender and demanded performance by defendant of its contract. Defendant was unable to perform, due to the situation which had been created by the Doble-Detroit Company. A few days after this the president of this company told Mr. Mansfield that "we have played horse with you long enough," and an arrangement was made for the surrender of the lease. On November 25th the premises were deeded to Mr. Kolb. Thereupon the Mutual Electric & Machine Company filed its bill against this defendant and Mr. Kolb for the specific performance of the contract. This case was settled and the property deeded to the Mutual Electric & Machine Company. The present action brought by plaintiff on this state of facts, there being no testimony offered by defendant, resulted in a directed verdict for plaintiff.

FELLOWS, J. (*after stating the facts*). We do not understand it to be contended that the memorandum signed by defendant does not satisfy the statute of frauds. The principal defense that is interposed to plaintiff's claim may be summarized as follows: There were two incumbrances on the premises, the Willing Company lease and the Doble-Detroit Company lease; of these leases the plaintiff had actual knowledge; he did not procure a customer ready, able and willing to purchase these premises with these incumbrances existing, but procured one who would accept only a free and unrestricted title and the sale failed because of one of these incumbrances. Defendant, therefore, invokes the rule that a broker who has knowledge of restrictions in the seller's title may not recover his commission where the sale fails of consummation because of such restriction. The existence of the general rule has been recognized by this court and

it has been applied in the following cases: *Appleby* v. *Sperling*, 194 Mich. 681; *Cain* v. *Masurette*, 196 Mich. 7; *Gettleson* v. *Lewis*, 206 Mich. 113. The question which here confronts us is whether the rule as broadly contended for by defendant's counsel is applicable to the facts of the instant case, whether the rule as thus broadly contended for has any limitations, exceptions or qualifications which prevent its application to the case before us. A consideration, therefore, of these three cases and of the facts involved in them and what was stated by this court in considering them is of prime importance.

In *Appleby* v. *Sperling, supra,* the plaintiff, a real estate broker, had by one of his employees, Mr. Smith, procured an agency contract from the land owner in which he agreed to furnish an abstract and tax history showing clear title. It was there claimed by the defendant that Mr. Smith was fully advised as to the mineral reservations, and that defendant was induced to sign the agency agreement on Mr. Smith's representations made after knowledge of such reservations that—

"Your title is all right; lots of farms with such claims on, and never any trouble. It ain't necessary to put it in the contract."

And we there said:

"Whatever effort he put forth to make a sale of the land, plaintiff knew that the alleged infirmity in the title to the land would be eventually confronted, and that it might result in defeating a sale. He says it did defeat a sale. The injustice of permitting him to now claim that the commission has been earned is manifest."

This case was followed by *Cain* v. *Masurette, supra,* which was likewise an action brought to recover commissions. We quote from what was there said by Mr.

Justice STONE, italicizing the language applicable to the instant case:

"While the weight of authority is to the effect that it is no defense to an action brought by an agent against his principal to recover commissions for negotiating a sale of land that the principal does not hold title to the land, or cannot convey a perfect title (see 19 Cyc. p. 240, and cases cited in note), yet the decisions generally hold that where a broker, who at the time he makes his contract with the owner, knows of defects in the employer's title, or who knows of facts sufficient to put a prudent person on inquiry, which, if followed with reasonable diligence, would have resulted in such knowledge, he is not entitled to recover where the sale failed because of such facts, *unless it was the intention of the parties that the employer should subsequently perfect his title in order to be able to perform.*"

The latest speaking of the court was in *Gettleson* v. *Lewis, supra.* There the restrictions were of a character that could not be removed. We there said:

"But where the principal's title is defective and the agent has knowledge of such defect *and it is not such a defect as may be removed by the principal,* the agent does not earn his commission by producing as a purchaser one who is willing to and does contract for only a good or a merchantable title or an 'absolutely unrestricted' one."

Authorities were there cited, and the language above quoted from the *Cain Case* was quoted, and it was further said:

"In the instant case there is no claim that the title was or could be perfected, and the sale fell through by reason of the restrictions."

This resume of these three cases demonstrates that while we have recognized the general rule we have at the same time recognized that it has its limitations and qualifications. In the *Cain* and the *Gettleson Cases*

we cited 4 R. C. L. p. 313. We now quote what was there said on this subject:

"Accordingly, although it has been held that the fact that the broker knew of the defect in the principal's title and of the equitable estate of a third person therein would not defeat his right to commissions, the decisions generally hold that a broker who at the time he makes his contract with the owner knows of defects in the employer's title, or knows of facts sufficient to put a prudent person on inquiry, which, if followed with reasonable diligence, would have resulted in such knowledge, is not entitled to recover where the sale fails because of such facts, unless it was the intention of the parties that the employer should subsequently perfect his title in order to be able to perform."

In the instant case all of the testimony shows that it was the intention of the parties that defendant should perfect the title by removing the incumbrances in the form of the leases in order to be able to perfrom. Everyone connected with the transaction knew of these leases. The contracts, the letters and other written evidence, the oral testimony, all tended in but one direction, all tend to establish such intention, and no claim or request was made in the court below that the question of intention of the parties should be submitted to the jury, both parties having asked for a directed verdict. Under these facts the case falls within the exception we have noted to the rule, rather than within the rule as broadly stated and as broadly contended for by defendant.

While the precise point here involved was not involved in the recent case of *Bagaeff* v. *Prokopik*, 212 Mich. 265, where we held that services of a real estate broker performed without the written memorandum required by the statute of frauds if resulting in a pecuniary benefit to the promissor created such a moral obligation as to furnish a consideration for a promise in writing in the form of a note, it should be

noted that we there declined to follow the holdings of the New Jersey court but did follow the holding of the Washington court in *Muir* v. *Kane*, 55 Wash. 131 (104 Pac. 153, 26 L. R. A. [N. S.] 519, 19 Ann. Cas. 1180). An examination of the Washington case will disclose that that court had under consideration a contract whose language was held not to comply with the statute of frauds of that State which is somewhat dissimilar to ours but which language is in essential effect similar to the language of the contract before us. The language there was

"and pay two hundred dollars ($200) of the purchase price to B. L. Muir & Company for services rendered."

In the contract before us the language is:

"In consideration of services rendered," etc.

The Washington court there held (we quote the syllabus):

"The moral obligation to pay for services of a real estate broker under a contract unenforceable, because not in writing, is sufficient to support a subsequent written agreement to make such payment."

This suit was instituted on November 25th, the day the property was deeded to Kolb, and plaintiff was permitted to recover interest from that date. It is insisted that this was error and that the suit was prematurely brought. It would seem to be the claim of defendant that if it is liable at all that liability did not become due until the settlement of the suit for specific performance. By the terms of defendant's contract with the Mutual Electric & Machine Company payment of the purchase price was due to it on November 1st. On that day Mr. Frank made the tender. Defendant did not accept the tender because through its own negligence in failing to procure a release of the Doble-Detroit Company it was obliged to breach its

contract with the Mutual Electric & Machine Company. It cannot now be heard to interpose its own breach, its own negligence, to defer the date of maturity of the contract. If there was any error it was to the prejudice of the plaintiff.

It follows from what has been said that the judgment must be affirmed.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.