Filed June 24, 1891.

---

No. 211.

## McFARLAND v. LILLARD.

REAL ESTATE BROKER.—*Undertaking to Sell.*—There is no distinction be-
tween an agent who undertakes to sell real estate and one who under-
takes to find a purchaser. The broker in either case is required to do
no more than find a purchaser.

SAME.—*Contract to Purchase not Mutually Binding.*—*Commission.*—A real es-
tate broker who finds a purchaser who is ready and willing to buy upon
the terms proposed by the owner is entitled to his commission, although
the contract to purchase is not mutually binding between the parties,
because not in writing.

SAME.—*Purchaser's Financial Ability to Complete Contract.*—*Presumption.*—
Where a real estate broker procures a purchaser for the land, the owner
can not, after repudiating the contract of sale, on account of his wife's
dissatisfaction, defeat an action for the commission on the ground of

McFarland *v.* Lillard.

the purchaser's financial inability to complete the purchase. In the absence of a showing to the contrary, the purchaser's financial ability to complete the contract will be presumed.

SAME.—*Change in Terms of Sale.*—Although the terms made by the broker differ from the terms of the original proposition, he may, notwithstanding such difference, recover the commission agreed upon if the owner accepts his terms.

From the Miami Circuit Court.

*R. Kimple, L. Walker* and *W. B. McClintic,* for appellant.
*S. D. Carpenter* and *J. W. Eward,* for appellee.

REINHARD, J.—Several errors are alleged in this cause, but as the merits of the appeal can be determined by the decision upon the sufficiency of the special verdict to support the judgment, we shall confine ourselves to that task alone.

The action was commenced before a justice of the peace, and was from there appealed to the circuit court, where the cause was tried by a jury and a special verdict returned, upon which, over appellant's objection and exception, the court rendered judgment in favor of appellee.

The suit was by a real estate broker for his commission on an alleged contract to sell a tract of land for the appellant.

The special verdict is as follows:

"We, the jury, having been required to return a special finding herein, find the following to be the facts:

"1st. We find that on the 11th day of August, 1887, the defendant entered into a written agreement with the plaintiff of which the following is a copy:

"'MARION, Ind., Aug. 11th, 1887.

"'If you will sell 200 acres, 175 acres under cultivation, at $50 per acre, $2,000 down, balance 1 to 10 years' time at 6 per cent., with privilege of 80 acres more if said sale is consummated within 6 months from date, I agree to pay L. C. Lillard two hundred dollars in cash, or if failure is my fault, then the above commission is due.

"'GEORGE McFARLAND.'

"Above land is situate in Jackson township, Miami county, Indiana.

"2d. That in pursuance of said contract, the plaintiff endeavored to find a purchaser for the land described in said agreement. That within two weeks after the date of said agreement plaintiff found a purchaser for said real estate, but under terms different from those mentioned in the above written agreement.

"3d. We find that the plaintiff in the month of August, 1887, informed the defendant that he had procured a purchaser for said real estate, and had agreed to sell the same to him, at and for the sum of twenty-five hundred dollars cash, and the remainder to be paid in two payments, and within three years from date.

"4th. We find that the defendant accepted said terms, and requested the plaintiff to send the purchaser, Allen J. Smith, to call and see him, the defendant, on the following Thursday.

"5th. We find that said Smith called upon the defendant at the time he was requested so to do and defendant accepted the terms of sale for said real estate, as made between the plaintiff and said Smith, and agreed to go with him to Peru on the next day to examine the title, and if the title was found to be satisfactory to execute the deed to said Smith for said real estate.

"6th. We find that on the night of the day said Smith called on defendant, he, the defendant, went to said Smith and informed him that his, defendant's, wife was dissatisfied, and that he could not make the trade ; that he, defendant, expected the plaintiff would claim his commission for the sale of said land.

"7th. We find that the defendant, before the commencement of this suit, acknowledged to John W. Eward that he was indebted to the plaintiff for commission for the sale of said real estate.

"If, upon the above facts, the law is with the plaintiff, we

find for the plaintiff and assess his damages at two hundred dollars and interest from the 1st day of September, 1887. If the law is with the defendant, we find for the defendant."

The appellant seeks to make a distinction, in the first place, between the case of an agent undertaking to sell and one undertaking to find a purchaser, claiming that in the case of an agent who undertakes to sell, he must not only find a purchaser, but must place the parties in such a position that the sale may be enforced between them by law.

We can not find any meritorious distinction between the two classes of cases. The broker, in either case, is required to do no more than find a purchaser. He can not do the selling unless specially authorized to do so by power of attorney. That must be done by the principal. The undertaking to " sell " in such cases is no more than an engagement to find a purchaser who is ready and willing to buy. *Treat* v. *De Celis*, 41 Cal. 202; *Duffy* v. *Hobson*, 40 Cal. 240; *Goss* v. *Broom*, 31 Minn. 484; *Reynolds* v. *Tompkins*, 23 W. Va. 229; see, also, *Lockwood* v. *Rose*, 125 Ind. 588.

The appellant next insists that before the appellee could recover he must show that he had effected a bargain and sale which was mutually binding between the parties, and as the contract to purchase was not in writing, it was void by the statute of frauds, and could not be enforced, and that consequently the appellee had failed to " sell," as contemplated by the contract.

In this view we can not concur. When the appellee had found a purchaser who was ready and willing to buy upon the terms proposed, he had performed his part of the contract, and the commission was due, although through the fault of the appellant the sale was not consummated.

The facts found show that it was the appellant who failed to carry out the contract of sale, and not the purchaser. If the appellant had been prevented from completing the sale by reason of the purchaser's taking advantage of his right under the statute of frauds, the appellant would have some

room for complaint that the contract of his agent was not a binding one; but when the facts show, as they do here, that the only reason the contract was not binding was because the appellant himself refused to make it so, certainly he can not be heard to complain, and thus take advantage of his own fault.

A broker may recover for services rendered though the contract be in part void under the statute of frauds. *Freeman* v. *Sabine,* 18 Alb. L. J. 497; *Dennis* v. *Charlick,* 6 Hun, 21; *Redfield* v. *Tegg,* 38 N. Y. 212; *Cook* v. *Kroemeke,* 4 Daly, 268; *Barnard* v. *Monnot,* 3 Keyes, 203; *Mooney* v. *Elder,* 56 N. Y. 238.

The case of *Love* v. *Miller,* 53 Ind. 294, furnishes some color to appellant for the position he takes, but does not support him. In that case the agent furnished a purchaser and effected a sale of the real estate by written contract, which was mutually obligatory upon both vendor and purchaser. The vendee afterwards refused to execute his part of the agreement. The vendor refusing to pay the commission to his agent upon the sale, the latter sued him. The court held that the principal was liable for the commission because the agent had effected a sale that was binding on both parties, although not carried out by the purchaser.

We presume the court concluded that although the contract was repudiated by the purchaser, still if the vendor was not disposed to enforce specific performance under the contract it furnished no excuse to him for escaping the payment of compensation so fairly earned.

In the case at bar it is not the vendee who refused to carry out the contract of sale, but the principal himself.

In *Lane* v. *Albright,* 49 Ind. 275, the owner of the real estate agreed to pay the broker a certain commission if he would procure a purchaser within a reasonable time, which he did. The owner sold the real estate before the broker had found a purchaser, and yet the court held that the agent

was entitled to his commission, having procured a purchaser afterward.

The court in that case says : " The appellant performed all that he was required by the contract to do, and was prevented by the appellee from selling the land. The appellee disabled himself from carrying out the contract of sale made by appellant. * * * The appellee can not thus avoid the obligation of his contract."

The case of *Fischer* v. *Bell*, 91 Ind. 243, which the appellant cites, is still farther from sustaining him. In that case the contract sued on was for procuring a purchaser, and the complaint was in three paragraphs. The court says : " The second objection is that neither paragraph of the complaint shows that the sale of the real estate was perfected by making a contract that would bind both parties in the sale. This was not required by the terms of the contract sued upon, as contained in the first or second paragraphs of the complaint; it might have been a good objection to the third paragraph of the complaint, to which the demurrer was sustained, and, doubtless, for that reason. If the appellee performed on his part all that the contract required him to do, and was prevented from consummating a sale by the act of appellant, that is sufficient."

Unquestionably, the parties have a right to provide in their contract that the agent not only shall find a purchaser, but that he shall procure from such purchaser a valid agreement in writing which will take the contract of sale out of the statute of frauds, and when this is the arrangement no commission can be collected until such written agreement to purchase is furnished. But even then the principal may waive it by accepting a purchaser and selling to him, or otherwise. Mechem Agency, 793.

But the agreement here contains no provision that the broker shall procure a written contract from the purchaser, and his undertaking to " sell " does not imply that he is to procure such a written contract.

If the third paragraph of the complaint in *Fischer* v. *Bell*, *supra*, which is relied upon, contained the averment that the broker was to procure a written contract for the sale of the land, a fact which the statement of the case does not disclose, and the pleading did not show that he did procure such written instrument, the lower court doubtless sustained the demurrer to the paragraph for that reason, and this is perhaps all the Supreme Court meant to indicate by the use of the language above quoted from that case.

The appellant's further contention is that as the special verdict fails to disclose that the purchaser was financially able to buy and pay for the land, the judgment can not be sustained. We do not think this follows.

It is doubtless true that if the purchaser was not able to buy and pay for the land upon the terms of the contract, the agent could not properly claim to have procured a purchaser. But it is not always necessary that the agent, before he will be entitled to recover, must allege and prove the financial ability of the purchaser, as the same will often be presumed.

The evidence is not in the record, and we can not say what the testimony was, or whether there was any upon the subject. But it is conclusively shown by the special verdict that the appellant repudiated the contract of sale, not on account of the purchaser's financial inability to comply with the contract, but because his (appellant's) wife was dissatisfied. Besides, if the appellant had desired to raise this question, we think it was incumbent on him to plead it specially, and assume the burden of proving it. *Goss* v. *Broom, supra; Cook* v. *Kroemeke, supra; Hart* v. *Hoffman*, 44 How. Pr. 168.

Moreover, the appellant accepted the offer, and as in the other instance his rejection of the contract afterwards was not based upon the ground of the purchaser's financial inability.

The further argument is made by appellant that as the special verdict shows a change in the agreement for the sale

of the land, no commission can be collected except it be upon *quantum meruit.*

The terms of the sale, it is true, were somewhat different from the original proposition. They were more favorable to the appellant, and as he accepted the same he can not now be heard to say that the work actually performed by his agent was worth any less than that he employed him to do.

There is nothing in the contention that the special verdict is not sufficiently definite to disclose the terms upon which the purchaser agreed ·to take the real estate. ,The terms agreed upon, as found in the special verdict, were $2,500 cash, and the remainder in two payments, within three years. The whole price was $10,000. It was not important how the two remaining payments were to be divided. If all was to be paid within three years, and these terms were accepted by the appellant, the demands of appellee's agreement were satisfied, and there is no good reason why he should not recover the commission.

The objection to the special verdict can not be sustained, and the court correctly rendered judgment thereon in favor of appellee.

The judgment is therefore affirmed.

Filed June 25, 1891.