FRANK L. CASWELL *et al. vs.* FRANK W. COY, alias.

JUNE 21, 1929.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

BARROWS, J. In this action of assumpsit a verdict in favor of plaintiffs, who had employed defendant as a broker to sell real estate, was directed for $3,087.50. The broker sold the property for $32,500, was paid $2,500 by the purchaser on account and claimed the right to retain this amount as commission. The basis of the court's action was infidelity on the broker's part and resulting therefrom denial of the broker's right to retain any commission. Defendant is before us on exceptions to the direction of the verdict and to certain rulings on evidence.

The duty of a broker to his client is "to secure as large a price as he is able for his principal and to inform his principal of all material facts." *Rushton* v. *Anderson*, 47 R. I. 441. Even if a fact not disclosed is material, failure to make it known to plaintiffs is not necessarily a bar to defendant's right to receive any commission. To have such an effect failure must be due to lack of that good faith which is owed by a broker to his client. Defendant asserts that under the circumstances of this case, his bad faith was not the only inference to be drawn from the evidence and that the question of good or bad faith was properly for the jury in the first instance.

The facts in the light most favorable to defendant show that plaintiffs originally offered the property at $40,000 agreeing to pay the defendant five per cent brokerage. Defendant had been in charge of the property for several years as rental agent. After unsuccessful attempts to sell and with the approach of the summer season of 1924, Caswell wrote to Coy that though it was worth much more the property might be sold by Coy for $30,000 net to Caswell, Coy to collect the brokerage from the purchaser. Coy had been dickering, as Caswell, knew, with one O'Brien concerning the purchase of the place. In May, O'Brien had written a letter to Coy in which he stated that he had been compelled to abandon a trip to Europe on account of a sick child and suggested a summer occupation and a tentative sale in the fall for $32,000, $2,000 to be paid at once as summer rental

and applied on the purchase price if the sale was consummated. Coy advised Caswell against considering O'Brien's offer. Coy replied to O'Brien that he was authorized to offer him the property for $32,500. While this was not a true statement it does not indicate bad faith between Coy and Caswell. It indicates Coy's attempt to sell for more than Caswell was asking. Coy evidently, though erroneously, believed that he was entitled to any excess over $30,000, if he could effectuate a sale. This was the theory upon which Coy presented his case to the trial court. It is not pressed in this court, Coy's counsel now conceding that "where the transaction negotiated is different from that originally contemplated and provided for in the contract of employment, the broker . . . may recover at the contract rate on the actual sale price or, if the mode or rate fixed upon by the contract is not applicable under the altered circumstances of the situation the broker is entitled to such reasonable commissions as, for similar services, brokers in that particular locality are by usage and custom entitled to." 4 R. C. L. ¶67, pp. 332, 333.

There can be little doubt that Coy acted throughout the deal as the broker for plaintiffs although Caswell at one point testified that Coy was not acting as his, Caswell's, broker after the permission to sell for $30,000 was given to Coy. We think it clear, however, that Coy never acted as an independent dealer or as an agent for the buyer and that Caswell's testimony above referred to fairly interpreted meant that Coy was not to get any commission out of Caswell if the latter received only $30,000.

O'Brien came to see Coy by appointment. Coy wrote Caswell of the appointment but advised against Caswell's presence. He told Caswell that O'Brien's correspondence was subject to his inspection. The result of the interview was that O'Brien agreed to buy for $32,500 and paid $2,500 down to Coy. When Caswell learned that a sale had been made he asked Coy how much commission was received and Coy told Caswell that the property was sold for enough to

give Caswell his $30,000. The receipt by Coy of $2,500 was not known to Caswell until about two months later, shortly before the execution of the deed. At that time plaintiffs did not repudiate Coy's authority to sell but claim was made on Coy by Caswell for $875 alleged to have been retained in excess of five per cent commission on a sale price of $32,500.

Plaintiff's declaration contained one count for this $875 and in addition the common counts. The grounds upon which the court directed a verdict were that the broker had withheld from his principal knowledge of a material fact, viz., O'Brien's altered plans for the summer of 1924 by reason of the sick child, and the falsity of Coy's representation to O'Brien that Caswell had authorized an offer of the property for $32,500. *Berry* v. *French*, 49 R. I. 128.

The record plainly indicates the unsatisfactory nature of Coy's testimony. It was not frank, even with his own attorney. Some questions were answered so reluctantly that one reading the evidence can not avoid doubting whether Coy stated the whole truth. In addition it was Coy himself who volunteered the information that the sick child was a factor in putting the sale through at $32,500. It was not surprising that the court received a very unfavorable impression of Coy's case. Yet we can not find that Coy's testimony was so wholly unreliable as to warrant its utter disregard and hold that his lack of good faith was indisputably established as a matter of law.

After Caswell's letter reducing the price to $30,000 with commission to be obtained from the purchaser, it seems to us that, while the relation of broker and client may have continued, the five per cent agreement was abandoned and the broker was authorized to offer the property for $30,000 plus such a sum as would net a reasonable commission to himself. There was a question for the jury as to the amount which constituted a reasonable sum for the broker's services and evidence relating thereto should have been admitted. The right to any commission, would not, of

course, exist if the broker had failed to exercise the requisite good faith.

Much of the business between Coy, Caswell and O'Brien was done in writing. A careful study of the correspondence does not fully convince us that Coy deliberately and intentionally withheld material facts from Caswell. A broker may not be expected to keep a principal fully informed of each detail of his negotiations. It is only failure to secure the largest price obtainable for the vendor and intentional withholding of knowledge of material facts which might affect the vendor's willingness to sell at the price suggested by the broker which defeats the broker's right to any commission. The broker's attempt to get $32,500 certainly was not opposed to Caswell's interest even if the broker erroneously thought himself entitled to all in excess of $30,000. Bad faith to Caswell is not the necessary inference from the broker's false statement that he was authorized to offer the property for $32,500. This was only one of the details of the dickering between Coy and O'Brien. The jury was entitled to consider whether there was any element of bad faith between Coy and Caswell in these dickerings.

Assuming that O'Brien's sick child was a material factor in causing him to consider the $32,500 proposition from Coy, there still was a question whether Coy's omission to write Caswell about it was an honest omission of a fact not deemed important or intentional failure to report to Caswell a material fact. There is no evidence that Coy was to secretly profit therefrom as in the *Rushton* case. It is true that Coy himself termed the sick child a "factor" in the sale but Coy also testified that he thought he told Caswell of the sick child a few days after receipt of O'Brien's letter. Perhaps the trial court did not believe Coy when he so testified. The testimony, however, stood in the evidence and can not be called so clearly false as to warrant disregard thereof as a matter of law. If Coy's statement is believed, Caswell by executing the deed ratified the sale at $32,500 and became liable for commission. 4 R. C. L. ¶52, p. 314; *McFarland*

v. *Lillard,* 2 Ind. App. 160; *Gelatt* v. *Ridge,* 117 Mo. 553; *Gilder* v. *Davis,* 137 N. Y. 504. His only dissatisfaction was as to the $875 alleged excess retained by Coy for services.

Consideration of the entire record convinces us that the court erred in holding that the only reasonable inference from the evidence was that Coy unfaithfully withheld knowledge of O'Brien's sick child and his necessitous condition from Caswell, and deliberately misstated facts concerning his authority to the disadvantage of Caswell. The doctrine which deprives the broker of all commission because of bad faith is a drastic one. While justified when good faith is not shown by the broker, the court should not draw an inference of bad faith unless no reasonable view of the evidence will warrant an inference of good faith. We think in this case the question of defendant's good or bad faith should have been submitted to the jury.

Defendant's exception to the direction of a verdict for the plaintiffs is sustained and his specific exceptions relating to rulings upon evidence need no comment other than that hereinbefore contained as to the relevancy of evidence concerning a reasonable commission.

The case is remitted to the Superior Court for a new trial.

*Hinckley, Allen, Tillinghast & Phillips, Harold A. Andrews, Edward W. Lincoln,* for plaintiffs.

*John J. Dunn, McGovern & Slattery,* for defendant.