[Civ. No. 63.  Fourth Appellate District.—June 6, 1930.]

G. W. BROOKS et al., Respondents, v. H. J. GROSS, Appellant.

278

H. C. Gardiner for Appellant.

Edward H. Whalen and Marcus W. Robbins for Respondents.

MARKS, J.—Respondents were real estate brokers duly licensed as such under the laws of the state of California. Appellant, together with his brother, Harry F. Gross, and the Estate of Layman, Deceased, were the owners of about forty-two acres of land in the county of San Diego, California. On or about March 15, 1926, appellant entered into a written contract with the respondent Brooks, employing him as a broker to negotiate the sale of this forty-two acres of land agreeing to pay a five per cent commission upon the selling price. About the first of October, 1926, respondent Brooks engaged R. E. Struve to assist him in negotiating the sale. This was done with the permission and consent of appellant, and the sale price was fixed at the sum of $20,000. About the 19th of October, 1926, respondents brought appellant and the J. C. C. Company, a corporation, together, and a memorandum in writing prepared by appellant's attorney, was executed whereby appellant agreed to sell to the J. C. C. Company, and it agreed to buy the real estate in question for the sum of $20,000. The agreement was signed by appellant and the corporation. Respondents had previously received $100 on account of the purchase price

and later collected an additional sum of $400, which sums were paid to appellant. On October 27, 1926, appellant, with his attorney and certain of the officers and agents of the J. C. C. Company, together with respondent Brooks, met in the office of the Union Title Insurance Company of San Diego, and appellant and the officers of the J. C. C. Company signed instructions to the Union Title Insurance Company for the consummation of the transaction and the sale of the property from appellant to the J. C. C. Company. These escrow instructions, together with the memorandum agreement before signed, set forth all of the terms of the contract of sale and purchase which were definite and complete except in one particular. The purchaser was engaged in the business of buying, subdividing and selling real property which it proposed to do with the forty-two acres in question. It desired a partial release clause in a mortgage of $15,000 which it had agreed to execute to appellant and his brother as part of the purchase price of the property. In the written instruments, the terms of the partial release clause were left to be later agreed upon. The memorandum agreement and escrow instructions were prepared under the direction of appellant and his attorney and the officers and agents of the J. C. C. Company. It does not appear that respondents took any part in the preparation of these instruments. The terms of the partial release clause to be inserted in the mortgage were never agreed upon.

On the tenth day of November, 1926, appellant approached respondents and negotiated with them concerning a reduction of their commission from $1,000 to $750. These negotiations resulted in a written agreement in words and figures as follows:

"San Diego, California.
"Nov. 10, 1926.

"Mr. G. W. Brooks } San Diego
"Mr. R. E. Struve }

"I hereby agree to give the regular 5% commission on $15,000.00 which amounts to $750.00 of the sale of Gross-Layman Estate secured by yourselves but will not pay commission on the $5,000.00 covering the ¼ interest sold by Public Administrator.

"(Signed) H. J. GROSS."

"We agree to accept the commission on $15,000.00 as noted above and release you of any further claim. We will look to the estate for commission on additional $5,000.00.

"(Signed)  G. W. BROOKS.

"R. C. STRUVE."

Under the escrow instructions, December 15, 1926, was fixed as the time limit for consummating the sale. The title to the property was defective and appellant was compelled to file suit to quiet his title which necessitated an extension of this time limit to January 1, 1927.

It seems that neither appellant nor his purchaser made any serious efforts to consummate the transaction and the sale was not completed. Respondents did not appear in the matter at all after the escrow instructions of October 27, 1926, except in signing the agreement of November 10, 1926, which we have quoted. On or about February 1, 1927, appellant told respondents that he had canceled the proposed sale to the J. C. C. Company and had sold the property to another purchaser. He demanded the return of the agreement of November 10, 1926, which demand was refused.

These facts were all found by the trial court and there is material evidence supporting the findings which therefore cannot be disturbed by us. (*Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [26 A. L. R. 123, 213 Pac. 42].)

Where, as in this case, a broker brings an owner and prospective buyer together and they negotiate a contract to their own liking, and the owner takes the consummation of the sale into his own hands and away from his brokers, he cannot complain if the contract with his buyer, which he himself prepared, is defective and does not lead to a final transfer of the property. As was said in the case of *Contant* v. *Wallace,* 62 Cal. App. 769 [217 Pac. 1081, 1082]:

" 'The contract of the broker is to negotiate a sale; that is, to produce a valid contract to purchase, which can be enforced by the vendor if his title is perfect; or if he does not procure such contract, to bring the vendor and the proposed purchaser together, that the vendor may secure such a contract, unless he is willing to trust to an oral agreement.' (*Gunn* v. *Bank of California,* 99 Cal. 349 [33 Pac. 1105]. See, also, *Mott* v. *Minor,* 11 Cal. App. 774 [106 Pac. 244]; *Cone* v. *Keil,* 18 Cal. App. 675 [124 Pac. 548]; *Massie* v.

*Chatom,* 163 Cal. 772 [127 Pac. 56]; *Twogood* v. *Monnette,* 191 Cal. 103 [215 Pac. 542].) It is true that in the opinions in some of the cases cited there are *dicta* which indicate that, where an agreement of sale is executed between one desiring to sell and a prospective purchaser presented to the seller by a broker, the latter does not earn his commission unless the agreement is valid and binding. Such a rule would place brokers in an intolerable position, as it would make their compensation for services depend upon circumstances beyond their control. Where the broker procures the contract from the purchaser it is of course necessary that the paper be one which is valid and the terms of which the seller may enforce, but where the seller himself formulates the contract with the purchaser the situation is different. It cannot be the law that a broker loses his commission, after bringing seller and purchaser together, if an invalid or unenforceable agreement is entered into between seller and purchaser through the mistake, inadvertence or ignorance of the former. Where the seller himself negotiates the terms of the contract the responsibility for its form and contents is on him and it is necessary only that it be satisfactory to him when executed. The fact of execution by him is sufficient evidence that he is satisfied, in the absence of fraud, duress or the like. When the seller takes into his own hands the completion of the agreement of sale, the affair is so much in his hands and the broker is so completely discharged from responsibility in the premises, that the seller is estopped to contend against the broker's claim for commission that the purchaser was not ready, able, or willing to make the purchase. (*Wood & Tatum Co.* v. *Basler,* 37 Cal. App. 381 [173 Pac. 1109]; *Sobaje* v. *Schubert,* 37 Cal. App. 709 [174 Pac. 364]. See, also, *Johnson* v. *Krier,* 59 Cal. App. 330 [210 Pac. 966].) Plainly, it is as much the seller's duty to formulate a valid and enforceable contract as it is to ascertain for himself that the purchaser is ready, able and willing to buy. We are satisfied that respondent earned her commission.''

The facts in the case before us go much further than those in the case of *Contant* v. *Wallace, supra.* ▮ We only need to consider the agreement between the parties hereto, dated November 10, 1926, and the circumstances under which it was executed to uphold the judgment of the trial court in

favor of respondents and against appellant. On that date appellant found himself in a position where he apparently would be obliged to pay respondents $1,000 commission on the sale of the real property. He sought to save himself $250 of this sum and agreed in writing to pay respondents $750 for their services. His offer was accepted by respondents and the written contract ensued. Appellant maintains that this agreement was not supported by any consideration. In this we cannot agree with him. He secured the reduction of his apparent liability in the sum of $250. He had already received, and as far as the record shows, still retains the sum of $500 paid by the J. C. C. Company on account of the purchase price of the real property, which money was delivered to him by respondents. Section 1605 of the Civil Code provides that a prejudice suffered by the promisee or benefit conferred on the promisor is a sufficient consideration to support a contract. (*Burge* v. *Midway Pacific Oil Co.*, 99 Cal. App. 714 [279 Pac. 181].)

In considering this phase of the case we must bear in mind that appellant could not deliver title to the property on December 15, 1926. The decree quieting title was not filed until December 24, 1926. Thereafter appellant took no steps to complete the sale until January 20, 1927, when he mailed a notice in San Diego to the J. C. C. Company requiring the completion of the escrow by February 1, 1927. It will be observed that the time for appeal from the decree quieting title had not expired at this time. On or about February 1, 1927, he demanded the return of the agreement of November 10, 1926, from respondents stating that he had sold his property to a purchaser other than the J. C. C. Company. On or about the last day appellant had given the J. C. C. Company to complete its part of the escrow, we find him demanding a return of his contract with respondents with the announcement that he had sold his property to a new purchaser. This fact of there being a new purchaser may furnish an explanation of appellant's cancellation of the escrow and his refusal to complete the sale to the J. C. C. Company. At least the trial court was authorized to weigh his evidence and consider his motives under all the circumstances of the case.

We are of the opinion that appellant having taken the completion of the sale to the J. C. C. Company and the

preparation of his contracts with it into his own hands and out of the control of respondents cannot be heard to complain that the contract which he prepared could not be specifically enforced. Under the circumstances of this case we believe that the contract between the parties bearing date of November 10, 1926, was supported by a valuable consideration.

Judgment affirmed.

Cary, P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 23, 1930.