PHILIP WATSON *vs.* HARRY A. DUREPO.

JANUARY 27, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is an action of assumpsit. After a trial in the superior court the jury returned a verdict for the plaintiff for $4250. The trial justice denied the defendant's motion for a new trial and the latter duly prosecuted his bill of exceptions to this court. He is now pressing exceptions to rulings on the rejection and admission of evidence, to the refusal of the trial justice to direct a verdict in his favor, and to the denial of his motion for a new trial. Defendant's other exceptions not briefed or argued are deemed to be waived.

The declaration in the case contains only the common counts. It is the plaintiff's contention that he is entitled to recover from the defendant for services rendered him in obtaining a purchaser for a certain business block owned by the defendant, in conducting the negotiations in connection therewith, and in bringing the purchaser and defendant together and introducing them so that they might themselves negotiate and reach a mutually satisfactory agreement regarding the sale of the property. On the other hand the defendant's contention in substance is that the plaintiff did not act for him in the above-mentioned transaction; that if he was representing anyone it was the purchaser of the property; that the latter paid the plain-

tiff $250 as compensation for his services; and that in the circumstances he is not entitled to prevail in this action.

The principal issue of fact raised herein is whether the plaintiff rendered certain services for the defendant and acted solely for him in the aforesaid business deal. This is not a case which involves the ordinary relationship of a real estate broker and his principal growing out of a sale of the latter's real estate. The case rests on its own peculiar facts. It is not necessary or possible to set out fully all the evidence offered but its general background and main points are as follows. The plaintiff conducted a delicatessen business in Wakefield in the town of South Kingstown where he resided. At the time of the transaction in question he was a tenant of the defendant. About October 1, 1947 the plaintiff learned from sources other than the defendant that the latter desired to sell his business block situated in Wakefield.

The plaintiff had a friend named William L. Bivona who lived in New Jersey and previously had asked plaintiff to let him know if property in the vicinity of Narragansett Pier suitable for investment came on the market. Following telephone calls and correspondence with the plaintiff, his friend offered $72,500 for the business block but that offer was refused by the defendant. Finally the prospective purchaser, by arrangement effected by plaintiff, came to Wakefield October 26, 1947 and conferred with the defendant that afternoon and most of the following day. Eventually they reached an agreement which was reduced to writing and executed providing for the sale of the property for $85,000 and delivery of the deed on or before March 1, 1948 on condition that the defendant was able to purchase a farm suitable for his personal use before that date. If he was unable to make such a purchase the agreement of sale was to be null and void. On February 28, 1948 the defendant duly executed and delivered the deed and the sale was consummated. Thereafter in March the plantiff, who had been made janitor of the block by the purchaser, went

to the defendant's office to obtain certain keys and then made a demand for compensation for services rendered in bringing about the sale of the property.

The defendant urges that his motion for a directed verdict should have been granted. He contends in substance that the evidence clearly shows that the plaintiff did not act in any manner as his agent or perform services for him in respect to the sale of the real estate. Plaintiff, however, introduced evidence to the effect that he first ascertained that his friend still desired to purchase property near Narragansett Pier, and then talked with the defendant telling him that he had a customer for the block if the defendant desired to sell. Upon receiving an affirmative answer the plaintiff replied: "All right. I will go to work on it * * *." The defendant then said: "I will take care of you."

Thereupon, according to the plaintiff's own testimony, he communicated with the prospective purchaser about the property, talked with the defendant several times and obtained from him the cost of maintaining the building including the expense for oil for heating, the amount of the taxes, the nature of the leases held by the tenants, the amount of the rents received from six offices and six stores and other like information, all of which the plaintiff forwarded to the customer. The latter's offer of $72,500 was thereafter transmitted by the plaintiff to the defendant who refused it. With the defendant's knowledge and approval the plaintiff then arranged a meeting in Wakefield between the customer and defendant for the afternoon of October 26, 1947 so that they might discuss the matter together as defendant desired. He introduced the prospective purchaser to the defendant, who was not acquainted with him, and then left so that they might conduct their own negotiations. The next day defendant came to plaintiff's place of business and told him that a sale of the block had been agreed upon. The purchaser was called as a witness for the plaintiff and in substance corroborated him.

In his testimony the defendant denied making the statement attributed to him to the effect that he would take care of the plaintiff if the block was sold. The defendant also denied giving the plaintiff any information concerning the expense of operating the block and the rents received therefrom. However, in his testimony he admitted that plaintiff asked whether or not it was for sale and when told that it was the plaintiff said: "I have a friend that might want it. I [defendant] said, 'If you have a friend that might want it, he will have to come to me.' That is my identical answer. That is all the conversation there was."

The evidence, as hereinbefore generally outlined, clearly was conflicting on several vital points and from it different inferences could reasonably be drawn as to the existence and extent of plaintiff's alleged agency. In our opinion, therefore, the trial justice acted correctly in submitting to the jury for their determination in the first instance the questions of fact thus raised by the contradictory evidence. It is settled that in deciding a motion for a directed verdict a trial justice cannot weigh the evidence or pass upon the credibility of the witnesses but must view all the evidence in a light most favorable to the adverse party. *Bouthillier* v. *United Electric Rys.,* 58 R. I. 419.

The defendant, however, further contends in support of his motion for a directed verdict that he was entitled as a matter of law to have the motion granted because the plaintiff accepted from the purchaser the sum of $250. The defendant relies on the cases of *Lynch* v. *Fallon,* 11 R. I. 311, and *Kessler* v. *Bishop,* 51 R. I. 202, which he argues hold in substance that an agent cannot ordinarily collect compensation from both the buyer and the seller, and that an agent of the seller is not faithful to his trust and entitled to compensation unless he makes a disclosure of material facts to the latter. Broadly speaking, the cited cases support the general principles above set out. However, those cases were decided on practically undisputed facts showing an improper attempt to collect from both parties

for the same services and are easily distinguishable from the instant case.

Here different inferences could reasonably be drawn from the evidence on this point and the trial justice properly left the question of the propriety of the plaintiff's conduct on that issue to the determination of the jury under comprehensive instructions to which no exceptions were taken. The evidence relied on by defendant in support of his contention merely shows an unsolicited promise by the purchaser to give the plaintiff $250 if the sale was consummated but such promise was not made till after the sale had been agreed upon. In our opinion the present case more nearly resembles *Paolino* v. *Appleton,* (R. I.), 131 A. 200, and *Caswell* v. *Coy,* 50 R. I. 221. In view of the facts and circumstances disclosed by all the evidence the defendant's exception to the denial of his motion for a directed verdict is overruled.

The defendant also argues that the trial justice committed prejudicial error in rejecting certain evidence offered by him and likewise in admitting certain evidence submitted by the plaintiff over the defendant's objection. The witness Bivona was asked in cross-examination by the defendant's attorney whether or not the witness *considered* that he had fulfilled his promise to pay the plaintiff $250. The plaintiff's objection thereto was sustained. Aside from the form of the question, which clearly asked for the witness' opinion, the matter of the $250 payment was fully covered in other parts of the testimony, and in fact the above question was thereafter repeated in another form and answered. In our opinion the defendant was not harmed by the action of the trial justice.

The second question under consideration, which was put to a real estate expert who testified as a witness for the plaintiff, was as follows: "What is a reasonable charge * * * for a sale by an agent of the owner of a parcel of real estate in * * * Wakefield, the sale price being $85,000.00?" In our judgment the question was relevant and material as bear-

ing on the value of the plaintiff's services. It may also be noted that the ordinary charge of a *real estate broker* was not asked for but only a reasonable charge by an "agent" of the owner, which substantially was the relationship to the defendant claimed by the plaintiff herein. We find therefore that the defendant's exceptions to the above rulings are without merit.

The remaining exception is to the refusal of the trial justice to grant the defendant's motion for a new trial. In considering the motion he had the benefit of having observed the witnesses and having heard them testify. In a carefully prepared rescript he clearly expressed his view of the evidence and characterized the witnesses. In so doing he has performed his duty by exercising his independent judgment in arriving at his decision. The sum awarded the plaintiff seems large but it is supported by the evidence in the present record. A qualified witness for the plaintiff testified as to the fair value of the services in question and did not change his opinion on cross-examination. Nor did the defendant offer any evidence to contradict him on that point. The issues were presented to the jury on adequate instructions. Upon consideration of this record we can not say that the decision of the trial justice in denying the motion for a new trial was clearly wrong. This exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment for the plaintiff on the verdict.

## On Motion for Reargument.

### February 17, 1950.

Per Curiam. After our decision in the above case the defendant asked and received permission to file a motion for reargument. Pursuant to this permission he has filed such a motion, setting out therein the grounds upon which he bases his contention that justice requires a reargument of the case. We have carefully considered such grounds and

we are of the opinion that they do not warrant a reargument of the case.

Motion denied.