**James A. WILSON (Plaintiff) Marion P. Loser and Joanne Loser, d/b/a Loser Realty, (Intervening Plaintiffs) Appellants,**

v.

**W. E. UPCHURCH and Nancy Upchurch (Defendants) Appellees.**

**No. 1–1180A311.**

Court of Appeals of Indiana, Fourth District.

Sept. 2, 1981.

Michael D. Austin, Jerome O. Pitt, Busby, Austin, Cooper & Farr, Anderson, for appellants.

James H. Ronald, Richmond, for appellees.

CHIPMAN, Presiding Judge.

Marion and Joanne Loser, as real estate brokers, sued W. E. and Nancy Upchurch to recover a real estate sales commission on a veterinary hospital owned by the Upchurches. The Losers are requesting a reversal of the trial court's finding that they, as brokers, failed to satisfy the terms of the listing agreement which they had with the Upchurches.

We affirm.

## FACTS

W. E. Upchurch was a veterinarian and he and his wife, Nancy, owned the Greens Fork Veterinary Hospital. The hospital, its equipment and a two bedroom apartment are located on 1.11 acres and were listed with the Losers on a standard listing agreement. According to the listing the Losers were entitled to a broker's commission when they found

> "a purchaser ready, willing and able to buy said real estate, or should said real estate be sold by or through you, [broker] ourselves [sellers] or otherwise, during said time for the price and upon the terms named above, or for any other price or terms, or consideration acceptable to . . . us."

The listing sales price was $290,000, with $40,000 as down payment and the unpaid balance to be paid over 20 years at a 10% interest rate.

The Losers procured James Wilson, a veterinarian, as a potential buyer. Wilson made an offer to purchase in the sum of $280,000 with $40,000 as down payment and the balance to be paid over 20 years at 10% interest rate. The purchase agreement contained numerous other provisions.

One of these provisions required that a sales contract be prepared by a mutually agreed upon attorney and it was to contain a 90 day default clause. Other provisions required Dr. Upchurch to execute a covenant not to compete and to work for Dr. Wilson.[1] In addition there was to be an option to purchase an adjoining 100 acres owned by the Upchurches. The Upchurches signed the purchase agreement.

For unexplained reasons the parties hired different attorneys and each had his attorney draft a sales contract and a separate employment contract. At this time differences began to arise between them.

Originally the parties could not agree on Upchurch's salary and the number of his paid sick days, the amount of insurance to be carried by Wilson, the terms of Wilson's option to purchase the additional acreage, client preferences for one veterinarian over the other, the length of the default period and what acts would constitute default, whether the covenant not to compete would be mutual, date of delivery of possession of the two bedroom apartment, and the value of the drug inventory at closing. When the extensive negotiations terminated all but the latter four differences had been resolved.

One of Wilson's last demands was possession of the apartment on the day of closing. The Upchurches claimed they could not deliver possession since the apartment was occupied by a paying tenant. Wilson also requested a clause in the sales contract requiring a $15,000 drug inventory on the day of closing. If the inventory was less than that, the purchase price would be reduced accordingly, but if it was greater than $15,000 no adjustment would be made. The

---

1. In his listing agreement Mr. Upchurch had indicated his willingness to work for the hospital's new owner.

Upchurches refused to agree to this provision.

On the other side, the Upchurches wanted a provision under which Wilson's failure to timely pay his drug suppliers would be tantamount to not making his contract payments, and a provision for a mutual covenant not to compete. Wilson refused to agree to these provisions and eventually sued the Upchurches for specific performance and damages, but later dismissed the count requesting specific performance.

The Losers entered the litigation as intervening plaintiffs seeking the sales commission. The trial court found the purchase agreement was unenforceable and found against Wilson. It also found the Losers had not earned their broker's commission under the terms of the listing agreement. Wilson has not appealed his negative judgment and the Losers are the sole appellants.

On appeal the Losers maintain the court erred in finding the purchase agreement unenforceable but they have voluntarily waived this issue. They argue the enforceability of the purchase agreement does not control whether they have earned their broker's commission.

## THE BROKERS RIGHT TO THEIR COMMISSION

None of the parties in this case petitioned the trial court to make specific findings of fact and conclusions of law pursuant to Ind. Rules of Procedure, Trial Rule 52(A), therefore we are faced with a general finding which we must affirm on any theory that is supported by the evidence.[2] *Sheraton Corporation of America v. Kingsford Packing Company, Inc.,* (1974) 162 Ind. App. 470, 319 N.E.2d 852. Additionally, the Losers are appealing a negative judgment. When reviewing a negative judgment the trial court's decision will only be set aside if

the evidence is uncontradicted and fails to support any reasonable inference in favor of the finding. *Taxpayers Lobby of Indiana, Inc. v. Orr,* (1974) 262 Ind. 92, 311 N.E.2d 814. This burden has not been met.

It is clear under Indiana law that if a binding contract is entered into by both the buyer and seller the broker is entitled to his commission. *Love v. Miller,* (1876) 53 Ind. 294. In their brief the Losers argue a broker does not have to bring the buyer and seller to a binding enforceable purchase agreement before the broker earns his commission. This statement is correct only as far as it goes.[3] Before a broker is entitled to his commission he must prove 1) an actual sale of the real estate or 2) that he had secured a buyer who was ready, willing and able to purchase the property upon terms listed by the seller and the seller refuses to complete the transaction or 3) that by and through the procurement of the broker, a third party had entered into a valid executory contract with the seller for the purchase of the land. *Baker v. Brewer's Estate,* (1921) 78 Ind.App. 143, 133 N.E. 397.

Under the facts in this case, the Losers must show they met either the second or the third condition precedent set out above since an actual sale of the real estate did not occur.

In its memorandum the court found the purchase agreement unenforceable because the parties did not intend to be bound by the agreement until the conditional sales contract and the employment contract had been finalized. This finding is not being appealed by the Losers but they argue the failure to reach an enforceable contract was brought about by the Upchurches' failure to negotiate in good faith. Citing *Billman v. Hensel,* (1979) Ind.App., 391 N.E.2d 671, the Losers further contend that they are entitled to their broker's commission since the

---

2. The trial court did enter into the record a Memorandum Regarding Judgment but the memorandum did not purport to be an equivalent substitute for T.R. 52 findings despite the memorandum's thoroughness and its sound reasoning with regard to the enforceability of the purchase agreement.

3. In making this argument in their brief the Losers cite "Vol. 5, *Eighth Decennial Digest,* Brokers, Key 54" as authority for their position. This is not an acceptable citation to authorities under Ind. Rules of Procedure, Appellate Rule 8.3(7).

Upchurches refused to negotiate in good faith.

In *Billman* the evidence showed the buyer did not make a good faith effort to secure financing to purchase the house. In our case the extensiveness of the negotiations and the fact the Upchurches were willing to make some concessions evidences their good faith effort to reach a binding agreement. The Losers did not procure a third party who entered into a valid executory contract and the Upchurches did not act in bad faith in dealing with Wilson.

Accordingly, the Losers needed to prove that they secured a buyer ready, willing and able to purchase the real estate *upon terms acceptable to the Upchurches* and the Upchurches then refused to complete the transaction. There is no dispute that Wilson was able to complete the transaction. The issue is whether he was ready and willing to do so on terms acceptable to the Upchurches. The Losers argue that since the Upchurches accepted Wilson's offer of $280,000, instead of the $290,000 asking price, consisting of a $40,000 down payment and a 20 year sales contract at 10% interest they had fulfilled their duties under the listing agreement and they were entitled to their commission. In making this argument the Losers totally ignore the fact that the purchase agreement also contained several provisions in addition to the amount and method of payment. The Losers argue their commission is controlled by the listing agreement and not by the purchase agreement. In that regard they are only partially correct.

The listing agreement entitled the Losers to their commission if they produced a buyer ready, willing and able to purchase on the listed terms or upon any other terms acceptable to the Upchurches. Wilson did not accept the Upchurches' offer to sell as stated in the listing agreement. He counteroffered with the various provisions contained in the purchase agreement. Therefore, the Losers were entitled to their commission only if Wilson was ready and willing to purchase the real estate on terms acceptable to the Upchurches. Although

the Upchurches agreed to the purchase agreement, that agreement, as found by the trial court, was not meant to be binding. Numerous issues had to be resolved in a manner acceptable to the Upchurches as roughly outlined in the purchase agreement. The facts show Wilson was not ready and willing to complete the sale under the terms acceptable by the Upchurches.

The purchase agreement contained at least two conditions precedent to the formation of a binding agreement, the drafting of a mutually agreed upon sales contract and employment contract. Since these two contracts were never mutually agreed upon and we find additionally other disputed items, it can not be said that the Losers produced a ready and willing buyer. *See McAllister Hotel v. Porte*, (1957) Fla., 98 So.2d 781.

In support of their argument that their right to a broker's commission became fixed upon the signing of the purchase agreement the Losers cite *Carey v. Conn*, (1923) 107 Ohio St. 113, 140 N.E. 643, *Simmons v. Libbey*, (1949) 53 N.M. 362, 208 P.2d 1070, and *McFarland v. Lillard*, (1891) 2 Ind.App. 160, 28 N.E. 229.

In *Carey* the broker procured a buyer who entered into a contract to purchase the real estate. When the contract was found to be unenforceable and was not consummated, the broker sued for his commission arguing he had procured a ready, willing and able buyer. The seller's defense was the buyer did not have the financial means to buy the property. In finding in favor of the broker the court said:

"The financial responsibility of the prospective purchaser was open to question by Carey [the seller] until the contract of sale was agreed upon and completed. After the contract was duly executed by the parties, such contract constituted a waiver so far as Conn [the broker] was concerned in regard to the purchaser being ready, willing and able to purchase the property. Whatever infirmities may have arisen out of the contract and conduct of the parties thereafter did not and

could not in any wise (sic) prejudice the rights of Conn to recover upon his contract to find such purchaser and make such sale."

*Carey v. Conn*, (1923) 107 Ohio St. 113, 140 N.E. 643, 644. If the financial responsibility of the buyer was only open to question until the contract was signed, the contract must not have contained a condition precedent that the buyer was able to secure his financing. *Carey* is therefore distinguishable from our case where the purchase agreement did contain conditions precedent.

*Simmons v. Libbey, supra*, is also distinguishable on its facts. In that case the court found in favor of the broker because the sale had been consummated and the buyer subsequently defaulted.

Lastly, *McFarland v. Lillard, supra*, is factually distinguishable since the seller in that case refused to complete the sale and his contract with the broker specifically provided the broker would still receive his commission if the sale was not consummated due to seller's failure to complete the sale.

The Losers' final argument contends the Upchurches are estopped from denying them the broker's commission since the Upchurches took over the negotiations with Wilson citing *Brooks v. Gross*, (1930) 106 Cal.App. 277, 288 P. 1089. In *Brooks* the court awarded the broker his commission after the buyer and the seller had entered into a contract which later proved to be unenforceable due to the seller's defective title. The California court held:

> "Where, as in this case, a broker brings an owner and prospective buyer together, and they negotiate a contract to their own liking, and the owner takes the consummation of the sale into his own hands and away from his brokers, he cannot complain if the contract with his buyer, which he himself prepared, is defective and does not lead to a final transfer of the property."

288 P. 1089, at 1090. *Brooks* is distinguishable from our case since the seller in *Brooks* actually signed a self-negotiated contract which later proved to be unenforceable due to his defective title to the real estate. In our case, the Upchurches never entered into a self-negotiated contract because the parties could not agree on the terms, and the purchase agreement was not negotiated by the Upchurches nor was it meant to be a binding agreement. Under these facts we do not believe the Upchurches are estopped from denying the Losers their commission.

Since the Losers have not fulfilled any of the three means of earning their commission as set out from *Baker v. Brewer's Estate, supra*, the trial court correctly found against them.

Affirmed.

MILLER and YOUNG, JJ., concur.